# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELON LUCIUS LANCASTER,<br>A 039-060-369,<br><br>    Petitioner,<br><br>v.<br><br>ICE/HOMELAND SECURITY,<br><br>    Respondent. | CIVIL ACTION NO. 1:16-cv-02562<br><br>(CONNER, J.)<br>(SAPORITO, M.J.) |

## **REPORT AND RECOMMENDATION**

On December 30, 2016, the Court received and filed a *pro se* petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2241, signed and dated by the petitioner, Delon Lucius Lancaster, on December 28, 2016. (Doc. 1). In this petition, Lancaster, a native and citizen of Guyana, challenged the legality of his extended detention. At the time of filing, Lancaster was being held in the custody of U.S. Customs and Immigration Enforcement ("ICE") at York County Prison, located in York County, Pennsylvania.

## I.   Background and Procedural History

Lancaster is a citizen and native of Guyana who was admitted to the United States in October 1985 as a lawful permanent resident. In

February 2004, he was convicted in federal court of conspiracy to commit bank robbery and using/carrying a firearm during a bank robbery conspiracy. He was sentenced to serve an aggregate term of 120 months in prison. Upon completion of his prison sentence, Lancaster was transferred into ICE custody on March 16, 2015, for removal proceedings.

On August 7, 2015, an immigration judge found Lancaster removable on grounds that he had been convicted of an aggravated felony crime of violence, an aggravated felony theft offense, an aggravated felony conspiracy offense, and a firearms offense, and denied his application for relief from removal. Lancaster appealed this removal decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on December 9, 2015.

On January 8, 2016, Lancaster filed a petition for review of the BIA's 2015 decision with the United States Court of Appeals for the Third Circuit. That same day, the Third Circuit issued a temporary stay of removal. On March 23, 2016, the Third Circuit stayed proceedings to give Lancaster an opportunity to file a motion to reopen with the BIA. On April 7, 2016, Lancaster filed a motion to reopen with the BIA to submit additional evidence in support of his Convention Against Torture claim,

and the BIA denied the motion on May 11, 2016.

On May 19, 2016, Lancaster filed a petition for review of the BIA's 2016 decision with the Third Circuit. The appellate court consolidated Lancaster's petitions, ordered that the stay of removal remain in place, appointed pro bono counsel, and ordered briefing. Lancaster's two petitions for review remain pending before the Third Circuit. *See Lancaster v. Attorney Gen. United States*, No. 16-1047 (3d Cir. filed Jan. 8, 2016); *Lancaster v. Attorney Gen. United States*, No. 16-2581 (3d Cir. filed May 19, 2016).

On December 30, 2016, Lancaster filed the instant federal habeas petition, seeking a bond hearing. (Doc. 1). The respondent filed her response on February 27, 2017. (Doc. 13). At this time, Lancaster has been held in ICE pre-removal custody, pursuant to 8 U.S.C. § 1226(c), for a period of more than 25 months.

## II. DISCUSSION

One of the statutory and constitutional duties conferred upon this Court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their continued detention as unconstitutionally excessive. In recent years, case law in this field has

evolved significantly, providing growing clarity regarding the contours of the right of immigration detainees to receive a minimal level of due process protection—an individualized bond hearing when confronted with detention for an indefinite and unreasonable duration.

For aliens awaiting removal, the contours of this right to due process were defined by the Supreme Court of the United States in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court extended due process protections to aliens who were subject to final removal orders and were detained indefinitely while awaiting removal from the United States. While the Supreme Court sustained the validity of an initial mandatory detention period during the 90-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A), beyond this initial 90-day period the Court found it "practically necessary to recognize some presumptively reasonable period of detention." *Id.* at 701. The Supreme Court recognized a 6-month period during which the post-removal alien's continued detention is presumed to be reasonable. *Id.*

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval

confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

*Id.* As this Court has recently recognized,

> Taken together, 8 U.S.C. § 1231(a)(1)(A) and *Zadvydas* created a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders should either be removed, or be given bail consideration.

*Ahad v. Lowe*, ___ F. Supp. 3d ____, 2017 WL 66829 (M.D. Pa. Jan. 6, 2017) (unpaginated report and recommendation), *appeal filed*, No. 17-1492 (3d Cir. Mar. 3, 2017); *Singh v. Lowe*, Civil No. 3:17-CV-119, 2017 WL 1157899, at *4 (M.D. Pa. Mar. 7, 2017) (report and recommendation), *adopted by* 2017 WL 1134413 (M.D. Pa. Mar. 27, 2017). Subsequently, the Supreme Court explicitly extended its holding in *Zadvydas* to cover inadmissible aliens as well. *Clark v. Martinez*, 543 U.S. 371, 378, 386 (2005). "Thus, when construing the post-final removal order detention statute, 8 U.S.C. § 1231, we are now enjoined to afford the same fundamental due process protections to all aliens, regardless of whether they were admitted to the United States or denied admission." *Ahad*, ___

F. Supp. 3d at ____, 2017 WL 66829; *Singh*, 2017 WL 1157899, at *4.

For aliens being held as they await removal proceedings, subsequent case law has extended these protections to them as well. In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court addressed whether § 1226(c)(1)(B)'s mandatory pre-removal detention provision, standing alone, violated due process, and held that it did not. But in doing so, the Court reiterated the fundamental idea that aliens, even those in pre-removal confinement, are protected by constitutional due process. *See id.* at 523. In reaching its conclusion, it also emphasized the brief duration of most removal proceedings, which seldom exceeded five months. *See id.* at 530.

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the Third Circuit read *Demore* as implicitly recognizing that "the constitutionality of [mandatory detention] is a function of the length of the detention. At a certain point, continued detention becomes unreasonable . . . unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Id.* at 232. "*Diop* laid out a two-step process: a reviewing court must first

determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill 1226's purposes." *Leslie v. Attorney Gen. U.S.*, 678 F.3d 265, 269–70 (3d Cir. 2012).

More recently, in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), the Third Circuit provided us with clear guidance in assessing the reasonableness of the duration of mandatory pre-removal immigration detention under § 1226(c). In a case where an alien is prosecuting a good-faith challenge to his or her removal from the United States, the Third Circuit held that:

> beginning sometime after the six-month time frame considered by *Demore*, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. . . . [T]he underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary.

*Id.* at 478.

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the Third Circuit also defined what showing

the government must make to justify the continued detention of the petitioner. According to that court, the immigration statute "'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.'" *Id.* at 475. Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.*" *Diop*, 656 F.3d at 233 (emphasis added).

Applying *Diop* and *Chavez-Alvarez* to the facts of this case, we conclude that the petitioner has made a *prima facie* showing to justify an individualized bond hearing. The petitioner's legal challenge to his removal is presented in good faith, the initial benchmark cited by the court in *Chavez-Alvarez*. The Third Circuit has appointed pro bono counsel to represent the petitioner on appeal, the parties have completed briefing on the merits, and oral argument is currently scheduled to take place before a panel of judges next week. It is also undisputed that the current duration

of the petitioner's detention now exceeds the one-year period that *Chavez-Alvarez* found to be presumptively excessive.

Finding that an individualized bond hearing is appropriate in this case, we recommend that the Court defer to the immigration judge in the first instance for a prompt individualized bond determination, applying the constitutional benchmarks outlined in *Diop* and its progeny. *See Chavez-Alvarez*, 783 F.3d at 478 n.12; *Ahad*, ___ F. Supp. 3d at ___, 2017 WL 66829; *Singh*, 2017 WL 1157899, at *9. In the event that the petitioner is denied a hearing, or is denied the rudiments of due process in that hearing, he is free to return to this Court by filing another petition for a writ of habeas corpus seeking further relief. *See Leslie v. Holder*, 865 F. Supp. 2d 627, 629 (M.D. Pa. 2012); *see also Ahad*, ___ F. Supp. 3d at ___, 2017 WL 66829; *Singh*, 2017 WL 1157899, at *9.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. The petition for a writ of habeas corpus (Doc. 1) be **GRANTED**.

2. An immigration judge be directed to afford the petitioner with an individualized bond hearing within **thirty (30) days** after the adoption of this report and recommendation. At this hearing, the immigration judge

must make an individualized inquiry into whether detention is still necessary to fulfill the purposes of ensuring that the petitioner attends removal proceedings and that his release will not pose a danger to the community, in accordance with *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). Further, the Government shall bear the burden of presenting evidence and proving the petitioner's continued detention is necessary to fulfill the purposes of the detention statute, in accordance with *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011).

3. The parties should report to this Court on the outcome of this individualized bond determination by an immigration judge within **seven (7) days** after the date of the hearing.

4. The Clerk be directed to mark this case as **CLOSED**.

Dated: May 4, 2017  *s/ Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELON LUCIUS LANCASTER,<br>A 039-060-369,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ICE/HOMELAND SECURITY,<br><br>　　　　Respondent. | CIVIL ACTION NO. 1:16-cv-02562<br><br>(CONNER, J.)<br>(SAPORITO, M.J.) |

# **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated May 4, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: May 4, 2017        *s/ Joseph F. Saporito, Jr.*
　　　　　　　　　　　　　JOSEPH F. SAPORITO, JR.
　　　　　　　　　　　　　United States Magistrate Judge